**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 14-22078-CIV-LENARD/GOODMAN

**JUICE & JAVA, INC.,**

      Plaintiff,

**v.**

**JUICE & JAVA BOCA, LLC,**

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JUICE & JAVA BOCA, LLC'S MOTION FOR SUMMARY JUDGMENT (D.E. 62)

      **THIS CAUSE** is before the Court on Defendant Juice & Java Boca, LLC's

Motion for Summary Judgment ("Motion," D.E. 62), filed September 30, 2016.  Plaintiff

Juice & Java, Inc. filed a Response on November 4, 2016, ("Response," D.E. 70), to

which Defendant filed a Reply on November 14, 2016, ("Reply," D.E. 71).  Upon review

of the Motion, Response, Reply, and the record, the Court finds as follows.

## I.    Background[1]

      On June 1, 2007, Plaintiff's owners, Alex and Dina Sverdlov, filed an application

with the United States Patent and Trademark Office ("USPTO") for the Word Mark

"Juice & Java," and a design plus words, letters, and/or numbers (the "First Mark").

(Pl.'s Facts ¶ 1.)  The First Mark looks like this:

---

[1]      Unless otherwise noted, the following facts are gleaned from Defendant's Statement of Material Facts, ("Def.'s Facts," D.E. 63), and Plaintiff's Statement of Facts, which is incorporated into Plaintiff's Response, ("Pl.'s Facts," D.E. 70 at 2-6).  All facts are undisputed unless otherwise indicated.



(See D.E. 61-1 at 2.)  On August 26, 2008, the First Mark was registered in the USPTO on the principal register under the Lanham Act, Registration No. 3,491,284, covering the use of the mark and design with respect to restaurants.  (Id. ¶ 2.)  The Sverdlov's orally assigned the First Mark to Plaintiff, and Plaintiff has owned the First Mark since August 2008.  (Pl.'s Facts ¶ 2.)

The First Mark has a status of "DEAD" with the USPTO.  (See USPTO Status Report for Registration No. 3,491,284, D.E. 61-1 at 2.)  According to the USPTO Status Report on the First Mark, the registration of the First Mark was "cancelled because registrant did not file an acceptable declaration . . . ." (Id.)

On July 12, 2013, Plaintiff filed an application with the USPTO for the Word Mark "Juice & Java Natural Food" and a design plus words, letters and/or numbers (the "Second Mark").  (Pl.'s Facts ¶ 3.)  The Second Mark looks like this:



2

(See D.E. 61-3 at 2.)  The Second Mark applies to restaurant services, including sit-down, take-out, and home delivery services.  (Id.)

The Second Mark has a status of "DEAD" with the USPTO.  (See USPTO Status Report for Application Serial No. 86/009,299, D.E. 61-3 at 2.)  According to the USPTO Status Report on the Second Mark, its application was "[a]bandoned after an inter partes decision by the Trademark Trial and Appeal Board."  (Id.)

Regardless, Plaintiff uses the Marks in its three South Florida restaurants.  (See Pl.'s Facts ¶ 4.)  Plaintiff first used the Marks in 2001 when it opened its Juice & Java restaurant in Aventura, Florida, which remains open today.  (Id. ¶ 4(a).)  Plaintiff also uses the Marks at its Juice & Java restaurants in Miami Beach, Florida, and inside the Equinox Spa in the Aventura Mall, in Aventura, Florida.  (Id. ¶ 4(b) & (c).)  Additionally, Plaintiff has a website, "JuiceandJava.com," which advertises Plaintiffs Marks and menu items "to the world."  (Id. ¶ 4(d).)

On October 20, 2006, Plaintiff entered into a written agreement with former Defendant, Zinovy Vayzman, regarding the use of the Juice & Java trade name ("the Agreement").  (Id. ¶ 5.)  Paragraph 8 of the Agreement states:

> As a condition to [Vayzman] selling the Location . . . , [Vayzman] shall be required to transfer and assign in writing all of it's [sic] rights under this agreement to the third party purchaser, and such third party purchaser must, in writing, assume its terms and agree to comply with all of [Vayzman's] obligations contained herein.

(Agreement, D.E. 69 at 25.)  Vayzman subsequently opened and owned a restaurant named "Juice & Java Café" (the "Restaurant"), located in Boca Raton, Florida.  (Pl.'s Facts ¶ 6.)  According to Plaintiff, the Restaurant uses several characteristics of the

Marks, including "the apple symbol, the color white, light green, and dark green, the white background with a large circle, the image of an apple having similar colors to the Marks with two light green leaves, and the words 'Juice & Java.'"  (Sverdlov Aff. ¶ 8.)

Vayzman sold all right, title and interest in the Agreement and in the Restaurant to Defendant, which continued to operate using the name "Juice & Java" in conjunction with the Marks.  (Id. ¶ 7.)  By letter dated October 9, 2013, Plaintiff terminated the Agreement.  (See D.E. 69 at 47.)  According to Plaintiff, Defendant and Vayzman, without Plaintiff's authorization or consent, has advertised, marketed, offered for sale, sold products or services, and operated the Restaurant and used the Marks and menu items in direct competition with, and in violation of, Plaintiff's rights.  (Id.)  Plaintiff states that Defendant continues to use the Marks at the Restaurant, as reflected by the sign on the front of the store, the employee's uniforms, and comparing Defendant's menu with Plaintiff's menu.  (Sverdlov Aff. ¶¶ 9-12.)

Defendant is now using the following "logo" in connection with its Boca Raton restaurant:



(Def.'s Facts ¶ 11.)  According to Brandi Levinson, Manager of the Defendant Restaurant, Plaintiff informed Defendant for the first time at the Court-ordered mediation

in this case that it was concerned that the sign on the front of the Restaurant was too similar to the sign on Plaintiff's restaurants.  (D.E. 71-1 ¶ 4.)  Before the mediation, Defendant's sign looked like this:



(Sverdlov Aff., Ex. D, D.E. 69 at 29.)  In April 2016, immediately after the mediation, "as a show of good faith" Defendant ordered a new sign to be installed outside the Restaurant.  (Id. ¶ 5.)  On June 21, 2016, the new sign was installed.  (Id. ¶ 6.)  It looks like this:



(Id. at 4.)  Defendant's Restaurant is more than thirty miles' drive from Plaintiff's closest restaurant.  (Def.'s Facts ¶ 12.)

On June 5, 2014, Plaintiff filed the instant lawsuit alleging that Defendant and Zinovy Vayzman were infringing its Marks.  (D.E. 1.)  On September 5, 2014, Plaintiff filed the operative Amended Complaint, alleging: Count I: Trademark Infringement in violation of 15 U.S.C. § 1114; Count II: Trademark Dilution in violation of 15 U.S.C. § 1125(c); Count III: False Designation of Origin in violation of 15 U.S.C. § 1125(a); Count IV: Trademark Dilution in violation of Section 495.151, Florida Statutes; Count V: violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Section 501.201, et seq., Florida Statutes; Count VI: common law Trademark Infringement; and

<u>Count VII</u>: breach of contract against Defendant Vayzman only.  On December 2, 2014, the Court dismissed the claims against Defendant Vayzman pursuant to Federal Rule of Civil Procedure 4(m) for lack of service.  (D.E. 31.)

On September 30, 2016, Defendant filed the instant Motion for Summary Judgment.  (D.E. 62.)

## II.    Legal Standard

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).  Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f)(1); <u>see also</u> <u>Gentry v. Harborage Cottages-Stuart, LLLP</u>, 654 F.3d 1247, 1261 (11th Cir. 2011).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.  Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party.  The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324; see also Fed. R. Civ. P. 56(c).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Id. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Id.

7

### III.   Discussion

Defendant argues that Plaintiff has produced no evidence to support the claims alleged in the Complaint.   Specifically, it argues that: (1) Plaintiff has no trademark registration to support an infringement claim under Section 32 of the Lanham Act, (Mot. at 5-6); (2) Plaintiff has produced no evidence to support its Trademark Dilution claim, (id. at 6-9); (3) Plaintiff has produced no evidence proving that a likelihood of confusion exists between Plaintiff's and Defendant's marks to support a claim of False Designation of Origin, (id. at 9-17); (4) the common law trademark infringement and FDUTPA claims fail for the same reason as the Lanham Act claims, (id. at 17); and (5) even if Plaintiff could state a claim under the Lanham Act, it is not entitled to any damages, (id. at 17-19).

### a)      Counts I and VI: Trademark Infringement Under Section 32 of the Lanham Act and Florida common law

First, Defendant argues that it is entitled to summary judgment on Plaintiff's claim for Trademark Infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, because there is no evidence that Plaintiff owns a trademark registration.  (Mot. at 5.)  In its Response, Plaintiff argues that a registered trademark need not be registered to be valid.  (Resp. at 8 (citing Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010).)  In its Reply, Defendant argues that a registered trademark is not required to maintain a trademark infringement claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)—as illustrated in Tana, 611 F.3d at 773—but a registered trademark is required for trademark infringement claims under Section 32 of the Lanham Act, 15 U.S.C. § 1114.  (D.E. 71 at 4.)

Section 32 of the Lanham Act "prohibits any person from the 'use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a <u>registered mark</u> in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.'" <u>Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.</u>, 496 F.3d 1231, 1242 (11th Cir. 2007) (emphasis added) (quoting 15 U.S.C. § 1114(1)(a)); <u>see also</u> <u>Burger King Corp. v. Mason</u>, 710 F.2d 1480, 1490 (11th Cir. 1983) (observing that in order to prevail on a trademark infringement claim under Section 32 of the Lanham Act, "the <u>registrant</u> must show that (1) its mark was used in commerce by the defendant without the <u>registrant's</u> consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive") (emphases added).  Thus, a registered mark is required to maintain a claim for trademark infringement under Section 32 of the Lanham Act.  <u>See</u> <u>John H. Harland Co. v. Clarke Checks, Inc.</u>, 711 F.2d 966, 972 (11th Cir. 1983) ("Section 32(1) of the Lanham Act, 15 U.S.C.A. § 1114(1), governs lawsuits for the infringement of a federally registered trademark.").

Here, it is undisputed that Plaintiff's Marks are <u>not</u> registered.  Rather, the First Mark is "DEAD" as it was cancelled for failure to file the required declaration, (D.E. 61-1 at 2), and the application for the Second Mark was "[a]bandoned after an inter partes decision by the Trademark Trial and Appeal Board[,]" (D.E. 61-3 at 2).  Because Plaintiff does not have a registered trademark, Defendant is entitled to summary judgment on Count I.  <u>See</u> <u>Fila U.S.A., Inc. v. Kim</u>, 884 F. Supp. 491, 494 (S.D. Fla. 1995) ("To prevail in an action for trademark infringement under [Section 32 of] the Lanham Act,

the plaintiff must show . . . that its mark is valid (i.e., properly registered, not generic, not abandoned through non-use) . . . .") (citing <u>Dieter v. B & H Indus. of Sw. Fla., Inc.</u>, 880 F.2d 322, 326 (11th Cir. 1989)).

Furthermore, because "[t]he analysis of liability for Florida common law trademark infringement is the same as under the [Section 32 of the] Lanham Act," <u>PetMed Express, Inc. v. MedPets.Com, Inc.</u>, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) (citing <u>Gift of Learning Found., Inc. v. TGC, Inc.</u>, 329 F.3d 792, 802 (11th Cir. 2003)), Defendant is entitled to summary judgment on Count VI.  <u>See Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.</u>, 91 F. Supp. 3d 1265, 1288 (S.D. Fla. 2015) (citations omitted) (granting defendant summary judgment on Florida common law trademark infringement claim because the plaintiff's claim under Section 32 of the Lanham Act failed and "the test for Florida and common law trademark infringement . . . is the same as that for federal trademark infringement"), <u>aff'd</u> 830 F.3d 1242 (11th Cir. 2016).

**b)      Counts II & IV: Trademark Dilution under Federal and Florida law**

Next, Defendant argues that it is entitled to summary judgment on Counts II and IV, which allege Trademark Dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and the Florida Registration and Protection of Trademarks Act ("FRPTA"), Fla. Stat. § 495.151, respectively.  (D.E. 19 ¶¶ 25-30, 37-40.)

The antidilution provision of the Lanham Act, as amended by the Trademark Dilution Revision Act, provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's

10

mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).  "The Trademark dilution remedy allows an owner of a <u>uniquely famous</u> trademark to prevent subsequent use of the mark . . . ." <u>Michael Caruso and Co., Inc. v. Estefan Enters., Inc.</u>, 994 F. Supp. 1454, 1463 (S.D. Fla. 1998) (emphasis added). In fact, one of the primary purposes of the Trademark Dilution Revision Act, which was signed into law in 2006, "was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie dolls, and the like." <u>Bd. of Regents, Univ. of Tex. Sys v. KST Elec., Ltd.</u>, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008) (internal citations omitted).

"To prevail on a federal dilution claim, the plaintiff must demonstrate that: (1) the plaintiff's mark is famous; (2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; (3) the defendant's use was commercial and in commerce; and (4) the defendant's use of the plaintiff's mark has likely caused dilution." <u>Rain Bird Corp. v. Taylor</u>, 665 F. Supp. 2d 1258, 1266-67 (N.D. Fla. 2009) (citing <u>Jada Toys, Inc. v. Mattel, Inc.</u>, 518 F.3d 628, 633 (9th Cir. 2008) (citing 15 U.S.C. § 1125(c)(1) and noting that after the 2006 amendments to the statute, a plaintiff need only prove a likelihood of dilution rather than actual dilution)); <u>see also</u> <u>Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.</u>, 671 F.3d 526, 536 (5th Cir. 2012) (citing <u>Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC</u>, 507 F.3d 252, 264-65 (4th Cir. 2007)).  "Courts have found that the standard for establishing a dilution claim under Florida law is essentially the

same as that of a dilution claim under the Lanham Act." <u>Fla. Int'l Univ. Bd. of Trs.</u>, 91

F. Supp. 3d at 1286 (citations omitted), <u>aff'd</u> 830 F.3d 1242 (11th Cir. 2016).

For purposes of Section 43(c), "a mark is famous if it is <u>widely recognized by the</u>

<u>general consuming public of the United States</u> as a designation of source of the goods or

services of the mark's owner."   15 U.S.C. § 1125(c)(2)(A) (emphasis added).   In

determining whether a mark possesses the requisite degree of recognition, a court may

consider all relevant factors, including:

> **(i)** The duration, extent, and geographic reach of advertising and publicity
> of the mark, whether advertised or publicized by the owner or third parties.

> **(ii)** The amount, volume, and geographic extent of sales of goods or
> services offered under the mark.

> **(iii)** The extent of actual recognition of the mark.

<u>Id.</u>   Florida's trademark dilution statute provides the following, non-exhaustive list of

factors that the Court may consider when determining whether a mark is distinctive and

famous:

> (a) The degree of inherent or acquired distinctiveness of the mark in this
> state.
> (b) The duration and extent of use of the mark in connection with the goods
> and services with which the mark is used.
> (c) The duration and extent of advertising and publicity of the mark in this
> state.
> (d) The geographical extent of the trading area in which the mark is used.
> (e) The channels of trade for the goods or services with which the mark is
> used.
> (f) The degree of recognition of the mark in the trading areas and channels
> of trade in this state used by the mark's owner and the person against whom
> the injunction is sought.
> (g) The nature and extent of use of the same or similar mark by third
> parties.

Fla. Stat. 495.151.

"In order to be famous, a mark must be more than distinctive." Carnival Corp. v. SeaEscape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1269 (S.D. Fla. 1999) (citing Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999)). Rather, "[t]o warrant protection from dilution, a trademark must be especially famous and distinctive." Michael Caruso and Co., 994 F. Supp. at 1463. Or, as the Ninth Circuit has opined, "to meet the 'famousness' element of protection under the dilution statutes, ''a mark [must] be truly prominent and renowned.''" Avery Dennison Corp., 189 F.3d at 875 (quoting I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 46 (1st Cir. 1998) (quoting 3 J. McCarthy, Trademarks & Unfair Competition § 24:91 (2d ed. 1984))).

> In a 1987 report, which recommended an amendment to the Lanham Act to provide a federal dilution cause of action, the Trademark Review Commission of the United States Trademark Association emphasized the narrow reach of a dilution cause of action: "We believe that a limited category of trademarks, those which are truly famous and registered,[2] are deserving of national protection from dilution." Trademark Review Commission, Report & Recommendations, 77 Trademark Rep. 375, 455 (Sept.-Oct. 1987).

Id. (footnote in original). Thus, "[d]ilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." Bd. of Regents, Univ. of Tex., 550 F. Supp. 2d at 674. As previously indicated, examples of this type of famous Mark are

---

[2]      The Trademark Review Commission's recommended amendment is very similar to the language of the eventually-enacted Federal Trademark Dilution Act. The main difference relevant to the famousness inquiry is that the Commission's recommendation only permitted a cause of action to the owner of a registered mark, while the owner of any protectable mark or trade name can bring a cause of action under the enacted version of the Federal Trademark Dilution Act.

Budweiser beer, see Anheuser–Busch, Inc. v. Andy's Sportswear, Inc., 1996 WL 657219,

No. C–96–2783 THE, (N.D. Cal. Aug. 28, 1996); Camel cigarettes, R.J. Reynolds

Tobacco Co. v. Premium Tobacco Stores, Inc., 2004 WL 1613563, No. 99–C–1174 (N.D.

Ill. July 19, 2004); and Barbie Dolls, Mattel, Inc. v. Jcom, Inc., 1998 WL 766711, No. 97

Civ. 7191(SS), (S.D.N.Y. Sep. 10, 1998).  Id. at 679.

 The only evidence to which Plaintiff cites in support of its claim that its Marks are

famous is the Affidavit of Alexander Sverdlov.  (See Resp. at 11.)  Plaintiff argues that

the Marks are Famous in South Florida because: (1) Plaintiff has three locations in South

Florida with visitors from all parts of South America, Central America, and throughout

the United States; and (2) it has been using the First Mark since May 2002 and the

Second Mark since October 2011.[3]  (Resp. at 11 (citing Sverdlov Aff. ¶¶ 2, 4).)  Plaintiff

cites no authority holding that this sort of evidence is sufficient to carry its burden of

production on the issue of famousness; and, in fact, using a mark for fifteen years "has

---

[3]  Defendant notes that Sverdlov's Affidavit contains other statements bearing on the famousness of Plaintiff's Marks, but Plaintiff did not cite to these statements in its Response. (See Reply at 2-3 (citing Sverdlov Aff. ¶ 21 ("The Marks owned by Plaintiff, Juice & Java are distinctive and are widely recognized by the general consuming public of the United States as a designation of the source of the goods and services of the Plaintiff's Marks and menu . . ."); id. ¶ 19 ("Plaintiff's Marks and the goodwill of Plaintiff's business associated with the Marks in the United States and throughout the world are of great and incalculable value, are highly distinctive and are associated in the mind of the public with the products and services of the Plaintiff, Juice & Java.").)  Defendant argues that these statements are conclusory and unsupported by any corroborating proof.  (Reply at 3.)  The Court agrees.  The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value." Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985).  "Bare assertions . . . are insufficient to create an issue . . . ."  Gordon v. Terry, 684 F.2d 736, 743 (11th Cir. 1982).  The statements made in Paragraphs 19 and 21 of Sverdlov's Affidavit constitute "nothing more than a recital of unsupported allegations, conclusory in nature.  As such [they are] insufficient to avoid summary judgment."  Broadway v. City of Montgomery, 530 F.2d 657, 660 (5th Cir. 1976).

been generally held an insufficient amount of time for a mark to become famous."

Michael Caruso and Co., 994 F. Supp. at 1463 (citing Star Mkts., Ltd. v. Texaco, Inc.,

950 F. Supp. 1030, 1034 (D. Haw. 1996) (mark used for forty-six years not famous);

Genovese Drug Stores, Inc. v. TGC Stores, Inc., 939 F. Supp. 340, 349 (D.N.J. 1996)

(mark used for nine years not famous)).  Additionally, the Marks are unregistered, and

"one could logically infer lack of fame from a lack of registration . . . ."  4 J. Thomas

McCarthy, McCarthy on Trademarks and Unfair Competition, § 24:106 (4th ed. 2016).

Furthermore, Defendant provides UPSTO Status Reports for at least four other

restaurants with active U.S. trademarks that include the phrase "Juice & Java" (or a

similar variant) that the USPTO has granted after requiring a disclaimer.[4]  (See D..E. 61-4

("Juice -n- Java Café"); D.E. 61-5 ("Jumpin' Juice & Java"); D.E. 61-6 ("NuVibe Juice

& Java"); D.E. 61-7 ("Java Juice").)   Third-party use of the same or similar marks

undermines any claim of distinctiveness for purposes of a dilution claim.   See Trs. of

Columbia Univ. v. Columbia/HCA Healthcare Corp., 964 F. Supp. 733, 750 (S.D.N.Y.

1997) ("[A]ny acquired distinctiveness of the plaintiff's mark in connection with medical

or healthcare services has been seriously undermined by third party use of the same or

similar marks[.]"); Sports Auth., Inc. v. Abercrombie & Fitch, Inc., 965 F. Supp. 925,

941 (E.D. Mich. 1997) (finding that "Sports Authority" mark is not famous because of

extensive third party use of term "authority").

---

[4]      "A disclaimer is a statement that you include in your application to indicate that you do not claim exclusive rights to an unregistrable portion of your mark."  U.S. Patent and Trademark Office, How to Satisfy a Disclaimer Requirement, available at https://www.uspto.gov/trademark/laws-regulations/how-satisfy-disclaimer-requirement (last visited Nov. 29, 2016).

Simply put, Plaintiff has presented no evidence from which a jury could conclude that its Marks are "truly prominent and renowned," <u>Avery Dennison Corp.</u>, 189 F.3d at 875 (citations omitted), "uniquely famous," <u>Michael Caruso and Co.</u>, 994 F. Supp. at 1463, or "especially famous and distinctive," <u>id.</u>, such that they are protected under the Lanham Act's or Florida's antidilution provisions.  <u>See</u> 15 U.S.C. § 1125(c)(2)(A) ("[A] mark is famous if it is <u>widely recognized by the general consuming public of the United States</u> as a designation of source of the goods or services of the mark's owner.") (emphasis added).  Accordingly, Defendant is entitled to summary judgment on Counts II and IV of the Amended Complaint.  <u>See</u> <u>Bd. of Regents, Univ. of Tex.</u>, 550 F. Supp. 2d at 677-79 (granting summary judgment for the defendants where the plaintiff, the University of Texas, failed to produce sufficient evidence to carry its burden of showing that its longhorn silhouette logo was famous enough to garner protection under the Lanham Act's antidilution provision).

c.    **Count III: False Designation of Origin**

Next, Defendant argues that it is entitled to summary judgment on Count III of the Amended Complaint, which alleges False Designation of Origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  (Am. Compl. ¶¶ 31-36.)  That provision states:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, . . . or any false designation of origin, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, . . . of such person with another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

16

15 U.S.C. § 1125(a)(1)(A). A false designation of origin claim "proscribes the behavior of 'passing off' or 'palming off,' which 'occurs when a producer misrepresents his own goods or services as someone else's.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (quoting Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n.1 (2003)). Here, Plaintiff is alleging a claim of "reverse palming off," which occurs when one misrepresents someone else's goods or services as his own. See Dastar Corp., 539 U.S. at 27 n.1; see also Andela v. University of Miami, 692 F. Supp. 2d 1356, 1376 (S.D. Fla. 2010).

To establish a prima facie case under § 1125(a), a plaintiff must show "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Tana, 611 F.3d at 773 (quoting Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 358 (11th Cir. 1997)). A plaintiff need not have a registered trademark to maintain a claim under Section 43(a) of the Lanham Act. Id. Here, it is undisputed that although the Marks were not registered, Plaintiff had rights in the Marks.

Defendant argues instead that Plaintiff has failed to present any evidence to support its burden of production as to whether a likelihood of confusion exists between Plaintiff's and Defendants' Marks. (Mot. at 10.) In evaluating whether there is a likelihood of confusion between the marks, the Eleventh Circuit applies a multifactor test, evaluating the following factors:

> (1) distinctiveness of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods or services offered under the two marks; (4) similarity of the actual sales methods used by the two parties, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) existence and extent of actual confusion in the consuming public.

Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1360 (11th Cir. 2007) (citing Conagra, Inc. v. Singleton, 743 F.2d 1508, 1514 (11th Cir. 1984)).  "Although likelihood of confusion generally is a question of fact, it may be decided as a matter of law."  Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir. 2000) (citing Conagra, 743 F.2d at 1514); see also Welding Servs., 509 F.3d at 1357 (affirming district court's granting of summary judgment in favor of the defendant where the record did not support a likelihood of confusion).

Defendant argues that "Plaintiff has not provided a single piece of evidence to show that any of these factors weigh in Plaintiff's favor[,]" and, in fact, "the majority of these factors weigh in favor of" Defendant.  (Mot. at 10.)  Plaintiff argues that the First Mark "symbolizes the reputation for quality and excellence of Plaintiff's products and services," and "Defendant's unauthorized use of the First Mark as reflected in its menu and the sign at its store is clearly likely to confuse consumers that Defendant's Restaurant, menu items, products and services are that of the Plaintiff's."  (Resp. at 12-13.)

After considering all of the factors and the Parties' arguments, the Court finds that a genuine issue of material fact exists as to whether consumers are likely to confuse the Marks.  First, a reasonable jury could find that the sign on Defendant's Restaurant, as it

existed before June 21, 2016, is confusingly similar to Plaintiff's Mark. As reflected in the USPTO's Status Report, the First Mark, which Plaintiff uses on its menu and website, looks like this:



(D.E. 61-1.) Prior to the Court-ordered mediation in this case, Defendant's sign looked like this:



(Sverdlov Aff., Ex. D, D.E. 69 at 29.) After the mediation, "as a show of good faith," Defendant ordered a new sign which was installed on June 21, 2016. (Pl.'s Facts ¶¶ 5-6.) The new sign looks like this:



(Decl. of Brandi Levinson, D.E. 71-1 at 4.) A jury could conclude that before June 21, 2016, Defendant's sign was the same or confusingly similar to Plaintiff's First Mark.

Second, Sverdlov attached a photograph to his Affidavit showing one of Defendant's employees wearing a t-shirt with the following symbol:



(Sverdlov Aff., Ex. E, D.E. 69 at 31.)  This appears to be similar to the apple emblem on

Plaintiff's Second Mark:



(D.E. 61-3.)  The Court concludes that a reasonable jury could find that the emblem

depicted on the uniforms Defendant's employees wear is the same or confusingly similar

to Plaintiff's Second Mark.

 Third, Plaintiff presented evidence that many of Defendant's menu items are the

same or similar to Plaintiff's menu items, including: "Billy Salad," "J&J Breakfast

Special," "Kevin's Special," "The Sunny Special," "Greek Morning," "Veggie Eggs,"

"White, Turkey and Cheese," "Sesame Bagel Ring," "Half Grapefruit," "Avocado Cups,"

"Hummus Appetizer," "Cucumber Yogurt Salad," "J&J Flat Bread," "Lettuce Chicken

Rolls," "Lettuce Tuna Roll," "Sweet Potato Mash," "Avocado Wrap," "Chicken Salad

Wrap," "House Veggie Wrap," "Falafel Wrap," "Billy Wrap," "Greek Wrap,"

"Mozzarella Caprese Wrap," "Smoked Salmon Wrap," "Mish Mash," "Portobello,"

"Dieters Delight," "Greenhouse," "Island Paradise," "J&J," "PBJ," "Chicken n' Rice,"

"Sofi Rice," "Dipping Plate," and "Mia Salad".   (<u>Compare</u> Pl.'s Menu, D.E. 69 at 33-40,

<u>with</u> Def.'s Menu, D.E. 69 at 42-43.)   Sofi and Mia are the names of the Sverdlov's

daughters.  (Sverdlov Aff. ¶ 15.)  The Court concludes that a reasonable jury could find

that Defendant adopted menu items that are confusingly similar to Plaintiff's menu items.

<u>See generally</u> <u>Lebewohl v. Heart Attack Grill LLC</u>, 890 F. Supp. 2d 278, 289-303

(S.D.N.Y. 2012) (analyzing whether the defendant's menu items were confusingly

similar to the plaintiff's menu items).

Defendant argues that even if genuine issues of material fact exist, Plaintiff is not

entitled to any damages.  (Mot. at 17.)  Plaintiff does not respond to this argument.

> To prevail on a false designation of origin claim, <u>a plaintiff must show it</u>
> <u>was either actually or likely to be damaged</u> by the fact that the defendant
> used a "false designation of origin, false or misleading description of fact,
> or false or misleading representation of fact, which [wa]s likely to cause
> confusion, or to cause mistake, or to deceive . . . as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial
> activities by another person."

<u>Lipscher v. LRP Publ'ns, Inc.</u>, 266 F.3d 1305, 1312-13 (11th Cir. 2001) (emphasis

added) (quoting 15 U.S.C. §1125(a)(1)(A)).   Because actual injury is not a necessary

element of a false designation of origin claim, Plaintiff could still establish liability under

the Lanham Act by showing a likelihood of injury.   <u>See</u> <u>Schutz Container Sys, Inc. v.</u>

<u>Mauser Corp.</u>, 1:09-CV-3609-RWS, 2012 WL 1073153, at *34-35 (N.D. Ga. Mar. 28,

2012) (denying defendant's motion for summary judgment as to Lanham Act false

advertising claim because proof of actual injury was not required).

Here, Sverdlov's Affidavit states that Defendant's actions "have caused and will continue to cause injury to Plaintiff's business reputation and/or dilution of the distinctive quality of the Marks." (Sverdlov Aff. ¶ 30.) Although these conclusory statements are insufficient to create a genuine issue of material fact, <u>Evers</u>, 770 F.2d at 986, the Court concludes that a reasonable jury could find, based upon the record evidence—including the similarity between the Parties' menus—that Plaintiff was injured, or is likely to be injured by the fact that Defendant falsely designated the origin of its Marks and menu items.

For these reasons, the Court finds that genuine issues of material fact exist as to Plaintiff's claim of false designation of origin under Section 43(a) of the Lanham Act.[5]

---

[5]     Plaintiff does not appear to argue that the new logo Defendant adopted for its Restaurant—i.e., —is confusingly similar to Plaintiff's First Mark—i.e.,

—or Second Mark—i.e.,                           . To the extent Plaintiff does so argue, the Court concludes that no reasonable jury could find that Defendant's logo is confusingly similar to Plaintiff's Marks. The only similarities between Plaintiff's Marks and Defendant's Mark are the literal elements "Juice & Java," which are not protectable as a trademark in connection with a restaurant business that serves juices and coffee beverages. <u>See</u> <u>Welding Servs.</u>, 509 F.3d at 1358. This is because the terms "juice" and "java" are generic terms, and "a term used generically cannot be appropriated from the public domain." <u>See</u> <u>id.</u> Although "a logo consisting of a nonprotectable literal element combined with a display or geometric design may be distinctive enough to receive protection[,]" <u>id.</u> at 1360, Plaintiff's logos and Defendant's logo are so overwhelmingly dissimilar that no reasonable jury could find that consumers could confuse the logos. <u>See</u> <u>id.</u> at 1361 ("Overwhelming visual dissimilarity can defeat an infringement claim, even where the other six factors all weigh in favor of the plaintiff."); <u>Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC</u>, 369 F.3d 1197, 1208 & n.12 (11th

### d.      Counts V: FDUTPA

Next, Defendant argues that it is entitled to summary judgment on Count V of the Amended Complaint, which alleges a violation of FDUTPA, Fla. Stat. 501.203(3)(a)-(c). (Mot. at 22.)  Defendant argues that the FDUTPA claim merely reincorporates the facts from the Lanham Act claims, and that the legal analysis for the FDUTPA claim is substantively identical to that of the Lanham Act claims.  (Id. (citing Gift of Learning Found., 329 F.3d at 803; Custom Mfg., 508 F.3d at 652-53).)

FDUTPA provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  "FDUTPA can be violated in two ways: (1) a per se violation premised on the violation of another law proscribing unfair or deceptive practice and (2) adopting an unfair or deceptive practice."  Reilly v. Amy's Kitchen, Inc., No. 13–21525–CIV, at *3 (S.D. Fla. Dec. 9, 2013) (quoting Hap v. Toll Jupiter Ltd. P'ship, No. 07–81027–CIV, 2009 WL 187938, at *9 (S.D. Fla. Jan. 27, 2009). (quoting Fla. Stat. §§ 501.204(1), 501.203(3)).  "A per se violation of FDUTPA results from the violation of '[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.'"  Id. (quoting Blair v. Wachovia Mortg. Corp., No. 11–cv–566–Oc–37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012)) (citation and internal quotation marks omitted).

_____

Cir. 2004) (holding that "no reasonable jury could find that the two logos are confusingly similar because the lack of visual similarity between the two designs is overwhelming").

Here, Count III generically alleges a violation of FDUTPA based on the "actions as described" earlier in the Amended Complaint.  (Am. Compl. ¶ 41.)  The only mention Plaintiff makes of FDUTPA in his Response to the instant Motion is with regard to antidilution.  (See Resp. at 10-11.)  Subsection (C) of the Response is titled: "Plaintiff's Claims for Trademark Dilution Pursuant to 15 U.S.C. § 1125, Fla. Stat. § 495.151 and Deceptive and Unfair Trade Practices Pursuant to Fla. Stat. § 501.204 are Viable Claims."  (Id. at 10.)   In that subsection, Plaintiff states that he has "sued Defendant for trademark dilution pursuant to [the Lanham Act, FRPTA, and FDUTPA] in Counts II, IV and V, respectively, of its Amended Complaint."  (Id. at 10-11.)  Because neither the Amended Complaint nor the Response argue a FDUTPA violation on any grounds other than antidilution, the Court finds that Count III alleges a per se violation of the antidilution provision of the Lanham Act and/or FRPTA.

Because the Court has previously concluded that Defendant is entitled to summary judgment on Plaintiff's antidilution claims under the Lanham Act (Count II) and FRPTA (Count IV), (see supra Section III(b)), Defendant cannot be liable for a per se FDUTPA violation of those statutes' antidilution provisions.[6]  See In re Mona Lisa at Celebration, LLC, 436 B.R. 179, 208 (Bankr. M.D. Fla. 2010) (granting summary judgment to the defendant on the plaintiff's FDUTPA claim because the plaintiff "did not violate any statute that could serve as a predicate to establish a per se violation of FDUTPA").

---

[6]     This conclusion assumes without deciding that a violation of the antidilution provisions of the Lanham Act and FRPTA may serve as the basis of a per se FDUTPA violation.

Therefore, Defendant is entitled to summary judgment on Count V of the Amended Complaint.  See id.

## IV.    Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (D.E. 62) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.  Specifically,  Defendant is entitled to Summary Judgment on Counts I, II, IV, V, and VI of the Amended Complaint.[7]

**DONE AND ORDERED** in Chambers at Miami, Florida this 17th day of January, 2017.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

---

[7]    As discussed in Note 5, supra, Defendant is also entitled to summary judgment on Count III to the extent that it claims that Defendant falsely designated the origin of its new logo.

25